SPIRO MOORE LLP
Ira Spiro, Cal. Bar #67641,
    Ira@spiromoore.com
Jennifer L. Connor, Cal. Bar #241480
    Jennifer@spiromoore.com
Denise L. Diaz, Cal. Bar #159516
    Deniseldiaz@Gmail.Com.
Justin F. Marquez, Cal. Bar #262417
    Justin@Spiromoore.Com
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Tel. (310) 235-2468, Fax (310) 235-2456

LAW OFFICE OF SAHAG MAJARIAN II
Sahag Majarian II - Cal. Bar #146621
    Sahagii@aol.com
18250 Ventura Boulevard
Tarzana, CA 91356
Tel. (818) 609-0807; Fax: (818) 609-0892

Attorneys For Plaintiff Elsy Garcia De Mira

## UNITED STATES DISTRICT COURT OF CALIFORNIA

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE BRANCH

| | |
|---|---|
| ELSY GARCIA DE MIRA, individually, and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>HEARTLAND EMPLOYMENT SERVICE, LLC.; and DOES 1 through 10 inclusive,<br><br>       Defendants. | CASE  NO: CV 12-04092 LHK<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:<br>Date:   September 26, 2013<br>Time:  1:30 p.m.<br>Crtrm: 8<br><br>Action Filed: August 3, 2012<br>Trial Date: August 14, 2014 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE OF THE LITIGATION ................................................................... 2

    A.    PLAINTIFF'S CLAIMS ................................................................. 2

    B.    PROCEDURAL HISTORY ............................................................ 4

    C.    DEFENDANT'S DENIAL OF WRONGDOING/LIABILITY ............ 6

III.    SUMMARY OF SETTLEMENT TERMS ..................................................... 7

    A.    CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS .......... 7

    B.    AWARD TO CLASS MEMBERS ................................................... 8

    C.    NOTICE TO CLASS MEMBERS ................................................... 9

IV.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .......... 10

    A.    STANDARDS FOR PRELIMINARY APPROVAL ........................... 10

    B.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY  APPROVAL ................................................ 11

      1.    The Settlement Negotiations Occurred At Arm's Length ........ 12

      2.    The Settlement Is Within The Range Of Possible Approval ........ 12

V.      PLAINTIFF'S CLAIMS MERIT CONDITIONAL CERTIFICATION .......... 20

    A.    NUMEROSITY ........................................................................... 20

    B.    COMMONALITY AND PREDOMINANCE OF COMMON ISSUES ......... 21

    C.    TYPICALITY ............................................................................. 23

    D.    ADEQUATE REPRESENTATION ................................................. 23

    E.    SUPERIORITY ........................................................................... 25

VI.     THE SETTLEMENT PROVIDES FOR A COMPREHENSIVE NOTICE PROGRAM .................................................................................................... 26

    A.    THE FORM AND METHOD OF CLASS NOTICE SHOULD BE APPROVED .................. 27

    B.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING ............ 29

VII.    CONCLUSION ............................................................................................... 30

1

2

## **TABLE OF AUTHORITIES**

3

Federal Cases

4

5

Alonzo v. Maximus, Inc.,
    (C.D. Cal. 2011) 832 F.Supp.2d 1122 ................................................................ 14

6

Amchem Prods. Inc. v. Windsor,
    521 U.S. 591, 117, 138 L.Ed.2d 689 (1997) ............................................... 20, 23

7

8

Cal.  Rural Legal Assistance, Inc. v. Legal Servs. Corp.,
    917 F.2d 1171 (9th Cir. 1990) .......................................................................... 21

9

Class Plaintiffs v. City of Seattle,
    955 F.2d 1268 (9th Cir. 1992) .......................................................................... 11

10

11

Clesceri v. Beach City Investigations & Protective Services, Inc.,
    2011 WL 320998 (C.D. Cal. 2011) ................................................................... 24

12

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156, 40 L.Ed.2d 732 (1974) .............................................................. 25

13

14

Gardner v. GC Services, LP.,
    2012 WL 1119534 (S.D. Cal. 2012) ................................................................. 18

15

Hammon v. Barry,
    752 F. Supp. 1087 (D.D.C. 1990) ..................................................................... 10

16

17

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ............................................. 11, 19, 20, 21

18

19

Hanon v. Dataproducts Corp.,
    976 F.2d 497 (9th Cir. 1992) ............................................................................. 21

20

Hopson v. Hanesbrands Inc.,
    2009 WL 928133 (N.D. Cal. April 3, 2009) .................................................... 16

21

22

In re Armored Car Anti-Trust Litigation,
    472 F.Supp. 1357 (N.D. Ga 1979) .................................................................... 10

23

In re Immune Response Securities Litigation,
    497 F.Supp.2d 1166 (S.D. Cal. 2007) ....................................................... 12, 13

24

25

In re Mercury Interactive Securities Litigation,
    618 F.3d 988 (9th Cir. 2010) ............................................................................. 19

26

In re Traffic Executive Ass'n – Eastern Railroads,
    627 F.2d 631 (2d Cir. 1980) .............................................................................. 13

27

28

In re: SmithKline Beckman Corp. Sec. Litig.,
    751 F.Supp. 525 (E.D. Pa. 1990) ...................................................................... 16

Ingram v. The Coca-Cola Co.,
    200 F.R.D. 685 (N.D. Ga. 2001) ................................................................ 16

Lerwill v. Inflight Motion Pictures, Inc.,
    582 F.2d 507 (9th Cir. 1978) ...................................................................... 22

Linney v. Cellular Alaska Partnership,
    1997 WL 450064 (N.D. Cal. 1997) ............................................................ 12

Local Joint Exec. Board Of Culinary/Bartenders Trust Fund v. Las Vegas
    Sands, Inc.,
    244 F.3d 1152 (9th Cir. 2001) .............................................................. 23, 24

Morris v. Lifescan, Inc.,
    54 Fed. Appx. 663 (9th Cir. 2003) ............................................................. 18

Mullane v. Central Hanover Bank & Trust, Co.,
    339 U.S. 306, 94 L.Ed. 865 (1950) ............................................................ 25

Murillo v. Pac. Gas & Elec. Co.,,
    226 F.R.D. 468 (E.D. Cal. 2010) ................................................................ 10

Navarro v. Servisair,
    2010 WL 1729538 (N.D. Cal. 2010) .......................................................... 16

Officers for Justice v. Civil Service Commission of City and County of San
    Francisco,
    688 F.2d 615 (9th Cir. 1982) .............................................................. 11, 12

Pridd v. Edelman,
    883 F.2d 438 (6th Cir. 1989) ...................................................................... 11

Silber v. Mabo,
    18 F.3d 1449 (9th Cir. 1994) ...................................................................... 25

Six Mexican Workers v. Arizona Citrus Growers,
    904 F.2d 1301 (9th Cir. 1990) .................................................................... 18

Sommers v. Abraham Lincoln Federal Savings & Loan Association,
    79 F.R.D. 571 (E.D. Pa. 1978) ................................................................... 10

Staton v. Boeing Co.,
    327 F.3d 938 (9th Cir. 2003) .......................................................... 11, 12, 17

Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,
    489 U.S. 782, 103 L.Ed.2d 866 (1989) ...................................................... 18

Torris v. Tucson Elec. Power Co.,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................ 18

Valentino v. Carter-Wallace,
    97 F.3d 1227 (9th Cir. 1996) ...................................................................... 23

Van Vranken v. Atlantic Richfield Co.,
  (N.D. Cal. 1995) 901 F.Supp. 294........................................................................16

Vasquez v. Coast Valley Roofing, Inc.,
  226 F.R.D. 482 (E.D. Cal. 2010)..........................................................................18

Villa v. United Site Services of California, Inc.,
  (Nov. 2012), 2012 WL 5503550............................................................................14

Vizcaino v. Microsoft Corp.,
  290 F.3d 1043 (9th Cir. 2002)..............................................................................18

Waine-Golston v. Time Warner Entertainment-Advance/New House
  Partnership,
  (S.D. Cal. 2013) 2013 WL 1285535.....................................................................14

Wal-Mart Stores, Inc. v. Dukes,
  -- U.S. --, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)..........................................14

Wang v. Chinese Daily News,
  231 F.R.D. 602 (C.D. Cal. 2005)..........................................................................19

Yeagley v. Wells Fargo Co.,
  2010 WL 601460 (9th Cir. 2010) .........................................................................18

State Cases

Bell v. Farmers Ins. Exch.,
  115 Cal.App.4th 715 (2004)..................................................................................16

Harris v. Liberty Mutual Insur.,
  171 P.3d 545 (2007) ..............................................................................................23

Lu v. Hawaiian Gardens & Casino, Inc.,
  50 Cal.4th 592 (2010) ...........................................................................................23

Ramirez v. Yosemite Water Co., Inc.,,
  20 Cal. 4th 7857 (1999) ........................................................................................23

See's Candy Shops, Inc. v. Superior Court,
  (2012) 210 Cal.App.4th 889 .................................................................................13

Federal Statutes

29 U.S.C. § 216(b).......................................................................................................8, 24

State Statutes

Business & Professions Code § 17200...................................................................4, 19, 20

Civ. Proc. Code § 1021.5..................................................................................................18

Labor Code §§ 201-203 ......................................................................................4, 19, 20, 21

Labor Code § 204 ........................................................................................4

Labor Code §§ 218.5, 218.6............................................................................18

Labor Code § 226 ..........................................................................4, 19, 20, 21

Labor Code § 226.7 ...........................................................................4, 18, 19, 20

Labor Code § 1194 ...............................................................................4, 18, 19

Labor Code § 2698 ........................................................................................9

Labor Code § 2699 ........................................................................................4


Federal Rules

Rule 23(a)(1) ...............................................................................................19

Rule 23(a)(2) .........................................................................................19, 20

Rule 23(a)(3) .........................................................................................21, 23

Rule 23(b)(3) .....................................................................................15, 24, 25

Rule 23(b)(3)(A)-(C) .................................................................................23, 24

Rule 23(b)(3)(D) ..........................................................................................23

Rule 23(c)(2)(B) .....................................................................................25, 26

Rule 23(e) ..................................................................................................11

Rule 23(e)(3) ..............................................................................................26

Rule 30(b)(6) ................................................................................................6


Federal Regulations

29 C.F.R. § 785.48(b) .....................................................................................13

Other Authorities

Manual For Complex Litigation, Fourth, § 21.633 and § 21.634 ..........................27

Newberg, §11.51 ...........................................................................................11

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.      INTRODUCTION**

3

4

5

6

7

8

9

10

11

12

13

14

        This is a putative wage and hour class action brought by former employee Plaintiff Elsy Garcia De Mira ("Plaintiff" or "De Mira") on behalf of current and former hourly non-exempt employees employed in California by Heartland Employment Services, LLC. ("Defendant" or "Heartland") since August 3, 2008 through the present.  Plaintiff De Mira primarily seeks to recover for alleged unpaid and underpaid wages arising from Defendant's rounding of time policies and practices, including minimum wages and overtime compensation, along with premiums arising from alleged missed, late, and interrupted meal and rest breaks.  Plaintiff also seeks relief for alleged inaccurate itemized wage statements, untimely payment of wages, unfair business practices, and to recover under the Private Attorneys' General Act ("PAGA").  Defendant denies liability and asserts thirty-five affirmative defenses.

15

16

17

18

19

20

21

22

23

24

25

26

27

        After more than a year prosecuting this litigation, Plaintiff has reached a proposed class action settlement with Defendant.  Prior to reaching the settlement, the parties exchanged multiple sets of written requests for discovery, produced over one thousand seven hundred (1,700) pages of documents, personnel files, wage statements, time records, and employment policies, took depositions, investigated applicable law, engaged consultants and reviewed over one million (1,000,000) days of time record data, analyzed damages, and party representatives engaged in numerous meetings and telephonic conferences.  Following a full-day mediation session before experienced mediator, Mark Rudy, Esq. on May 7, 2013, and numerous direct negotiations between counsel, Plaintiff and Defendant have finalized the Class Action Settlement Agreement And Stipulation ("Settlement Agreement").  A true and correct copy of the Settlement Agreement are attached at Exhibit "1" to the Delcaration Of Jennifer L. Connor ("Connor Decl.") submitted concurrently herewith.

28

Subject to Court approval, the essential settlement terms are that Defendants shall make available for maximum payment a non-reversionary ***One Million And Four Hundred Fifty-Three Thousand And Five Hundred Dollars ($1,453,500)*** into a Settlement Fund that will be created for the benefit of the Class Members.  Based on the data provided to Plaintiff for mediation, and relied upon, the Settlement Class comprises approximately 4,000 current and former non-exempt hourly employees of Defendant who worked at either skilled nursing facilities or Heartland's home health and hospice facilities in California - for one or more days between August 3, 2008 and the date of Preliminary Approval.  Connor Decl. ¶ 16; Settlement Agreement ¶¶ 4 and B.20.  The Settlement Fund will be used to pay administration of the settlement, a payment to California's Labor Workforce Development Agency, any enhancement awards approved by the Court to the class representative, any individual payment to the class representative in consideration for her global release of all claims, and all costs and fees awarded and approved by the Court to Plaintiff's counsel.  Connor Decl. ¶ 16; Settlement Agreement ¶ B.23.  ***This is a non-reversionary Settlement that will be distributed to Participating Class Members until disbursed.***  Settlement Agreement ¶ D.1.  For the reasons set forth herein, Plaintiff respectfully submits that the Court should preliminarily approve the Parties' Settlement Agreement, approve the proposed method and form of Notice, along with the proposed Claim Form, and schedule a Fairness Hearing to consider final approval of the proposed Settlement.

## II.     NATURE OF THE LITIGATION

### A.     Plaintiff's Claims

Plaintiff Elsy Garcia De Mira asserts that this litigation arises from Heartland's business practices that allegedly violated California wage and hour laws and resulted in the failure to compensate her and other hourly non-exempt employees for all hours worked.  Specifically, for the vast majority of Plaintiff Class Members who worked at

skilled nursing facilities, Defendant used Kronos software for recording the hours worked, a timekeeping system that captures the ***exact time*** an employee starts and ends work. However, instead of paying employees for the actual hours worked (as recorded by employees on a daily basis via badge swipes and/or key and finger punches), the Kronos system was used to round each actual time entry. As a result of the rounding, the actual hours worked by Plaintiff and other non-exempt hourly employees were allegedly artificially reduced to their economic disadvantage. Plaintiff asserts that the purpose and effect of Defendant's use of the rounding function on the Kronos timekeeping system resulted, over a period of time, in the failure to compensate Plaintiff and putative class members fully for all of the time they have actually performed work.

Plaintiff also alleges that she and putative class members were not provided meal and rest breaks in compliance with California law. Heartland has a duty to provide its non-exempt employees with thirty minute meal breaks and yet, Plaintiff alleges it failed to supply the staffing resources to permit a reasonable opportunity to take such breaks. Plaintiff alleges that hourly employees frequently "missed" meal periods, and often experienced "late" and "shortened" meal breaks. Plaintiff contends that Defendant's staffing schedules simply did not afford workers an opportunity to take duty-free and uninterrupted meal and rest breaks. Plaintiff posits that the practical demands of the health care services offered and the needs of its patients conflicted with any theoretical policy of providing breaks. Finally, Plaintiff alleged that Heartland is liable for derivative claims for failing to provide accurate wage statements, failing to pay all wages timely twice per month, failing to pay all monies owed to employees who have separated employment within the statutory period, along with violation of PAGA and California's unfair competition laws ("UCL").

Plaintiff filed this putative class action against Defendant alleging eight causes of action: 1) <u>Labor Code</u> § 226.7 (failure to provide duty-free rest breaks); 2) <u>Labor Code</u> §

226.7 (failure to provide timely duty-free meal periods); 3) <u>Labor Code</u> § 1194 (failure to pay minimum wages and overtime); 4) <u>Labor Code</u> § 204 (failure to pay wages twice per month); 5)  breach of contract (failure to pay all wages); 6) <u>Business & Professions Code</u> § 17200 *et seq*. (unfair business practices); 7) <u>Labor Code</u> § 226 (inaccurate itemized wage statements); and 8) <u>Labor Code</u> § 2699 (Private Attorneys General Act penalties). Additionally, Plaintiff seeks derivative relief for alleged failure to timely pay final wages pursuant to <u>Labor Code</u> §§ 201-203 to former employees.

### B.    Procedural History

The Complaint was filed in this Court on August 3, 2012.  [D.E. 1]  The original Complaint asserted the above-described claims against originally named defendants HCR ManorCare, HCR ManorCare Medical Services of Florida, LLC; Manor Care, Inc.; and Does 1 through 10.  Each of the causes of action was asserted against all of the defendants named in the complaint by Plaintiff and on behalf of a class of "[a]ll persons employed in California, at any time on or after four years before the filing of the initial complaint in this action, by HCR ManorCare, HCR ManorCare Medical Services of Florida, LLC, ManorCare, Inc. or any of the other Defendants, in an hourly paid job position." [D.E. No. 1, at para. 71].  On September 24, Defendants answered Plaintiff's complaint.  [D.E. No. 16]

On March 8, 2013, the Parties filed a Stipulation Re: Leave To File First Amended Complaint To Add A "Doe 1" Defendant And Dismiss Without Prejudice HCR ManorCare; HCR ManorCare Medical Services of Florida, LLC; and Manor Care, Inc. [D.E. No. 33]  The purpose of this Stipulation was to dismiss the improper defendants (i.e., those entities named in the initial complaint) and to add as "Doe 1" the employer of Plaintiff and the putative class, Heartland Employment Services, LLC as the sole named Defendant in this case.    After Court-approval of the Stipulation, on March 20, 2013, Plaintiff filed the operative First Amended Complaint ("FAC") against Heartland

Employment Services, LLC [D.E. No. 36].   On April 4, 2013, Defendant Heartland Employment Services, LLC, answered the First Amended Complaint. [D.E. No. 37]

On January 23, 2013, the Parties appeared for their Initial Case Management Conference whereby the Court set briefing and trial deadlines in this matter.  During the next several months, the parties exchanged discovery and took depositions.  Connor Decl. ¶ 4.  On February 6, 2013, Plaintiff propounded formal discovery requests as follows: Plaintiff's First Set of Interrogatories to HCR ManorCare [Re: HCR ManorCare Entities]; Plaintiff's Second Set of Interrogatories to HCR ManorCare [Re: Policies and Practices]; Plaintiff's Third Set Of Interrogatories to HCR ManorCare [Re: Class Contact Info]; Plaintiff's First Set of Requests For Production of Documents To HCR ManorCare [Re: HCR ManorCare Entities]; Plaintiff's Second Set of Requests For Production of Documents To HCR ManorCare [Re: Policies and Practices]; and Plaintiff's Third Set of Request For Production of Documents [Re: Class Contact Info].  Connor Decl. ¶ 7. In March 2013, Defendant responded to Plaintiff's discovery requests, except for certain requests which Plaintiff withdrew in light of Defendant's voluntary production of information, including a sworn declaration.  Connor Decl. ¶ 7.

On February 28, 2013, Defendant propounded written discovery requests, including interrogatories, requests for admission, and requests for production of documents.  On April 2, 2013, Plaintiff responded to that discovery and produced additional documents, for a total of 300 pages of documents produced by Plaintiff.  Connor Decl. ¶ 8.  In March and April 2013, Defendant produced almost 1,700 pages of documents.  Along with payroll data, Defendant also provided timekeeping punch report data for class members during the statutory period that included an estimated 1,193,969 days of employee time punch data.  Connor Decl. ¶¶ 6 and 10.  The Parties also took depositions: the Defendant deposed Plaintiff De Mira on April 25, 2013 and Plaintiff took an FRCP Rule 30(b)(6) deposition of Defendant's Person Most Knowledgeable on eleven separate topics on April

23, 2013.  <u>Connor Decl.</u> ¶ 9.

Recognizing that substantial efforts were about to be expended as the case progressed towards a contested certification motion, coupled with the risks attendant with factual and legal issues, the Parties engaged in settlement negotiations.  <u>Connor Decl.</u> ¶ 12.  On May 7, 2013, the parties attended a full day of mediation in San Francisco before experienced mediator, Mark Rudy, Esq., a highly-respected neutral mediator in San Francisco, California who specializes in wage and hour class action mediations.  <u>Connor Decl</u>. ¶ 14.  With Mediator Rudy's assistance, the Parties reached agreement, subject to the approval by the Court, to the Settlement of this action.  In the weeks following the mediation, the Parties continued to negotiate and agree on certain terms.  <u>Connor Decl.</u> ¶ 14.  On June 17, 2013, the Parties executed a Memorandum of Understanding that became the template for the Parties' long-form Settlement Agreement.  <u>Connor Decl.</u> ¶ 14. Plaintiff now requests that the Court take the first step in the approval process – granting the requestsed preliminary approval of the settlement which is sought herein.

## C.    Defendant's Denial Of Wrongdoing/Liability

Defendant denies any wrongdoing or legal liability with regard to any and all of the claims asserted in this litigation and assert a variety of defenses.  *See*, <u>Answer to FAC</u>, [D.E. No. 37]. Defendant contends, for example, that it has paid employees in compliance with California law, including with regard to all time worked, minimum wage, and overtime.  *See*, <u>Joint Case Management Statement</u>, p. 2 [D.E. No. 29].  Defendant denies that the practice of rounding of employees' work time resulted, over a period of time, in the failure to pay all wages due for time actually worked.  <u>Id</u>.  Defendant also contends that it has at all relevant times authorized and permitted its employees to take rest breaks and meal periods as required by applicable statutes and Wage Orders.  <u>Id</u>.  Moreover, Defendant contends that the imposition of penalties would be inequitable, unjust, and unlawful, and that it has at all relevant times acted in good faith, reasonably, and without

malice or any form of willful misconduct.  <u>Id</u>.  Further, Defendant contends that Plaintiff's claims are not appropriate for class treatment and that litigation of Plaintiff's claims on a class basis would constitute a denial of Defendant's due process and legal rights.  <u>Id</u>.

Defendant nevertheless has expressed its desire to settle the class action and claims asserted on the terms and conditions set forth in the Settlement Agreement for the purpose of avoiding the burdens, expenses, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies advanced by the litigation.  <u>Settlement Agreement</u> ¶ A.5.  Should this litigation not resolve, there are significant factual and legal issues in dispute that the Parties will vigorously contest in future legal proceedings.

## III.   SUMMARY OF SETTLEMENT TERMS

Plaintiff and Defendant have agreed to a settlement of this lawsuit on a class-wide basis.  In short, the Settlement provides that Defendant will make available a maximum sum in the amount of ***$1,453,500.00*** payable into a Settlement Fund that will be created for the benefit of the Class Members and to resolve any and all issues related to this litigation.  This Settlement Fund is ***non-reversionary***.  <u>Settlement Agreement</u>, ¶ D.1.

### A.     Conditional Certification Of Settlement Class

Plaintiff and Defendant have agreed to seek preliminary approval of the Settlement Agreement, which include preliminary approval of certification of the Class for settlement purposes only.  <u>Settlement Agreement</u> ¶ C.2.  Accordingly, Plaintiff hereby moves for certification of a Class as defined as follows:

> All hourly, non-exempt employees of Heartland Employment Services or any other HCR entity working at least one day in California during the Class Period, except those who have otherwise released, waived, or recovered monies on, the Settled Claims ("Class").  <u>Settlement Agreement</u> ¶ B.5.

Each Class Member who has not timely and validly opted out of this Settlement will be deemed a "Plaintiff Class Member."  <u>Settlement Agreement</u> ¶ B.28.  Further, "Participating Class Member" means each and every Class Member who timely submits a

valid Claim Form.  Settlement Agreement ¶ B.25.   For settlement purposes only, Defendant does not dispute that all Participating Class Members are similarly situated, and Plaintiff hereby moves for collective certification of Claimants within the meaning of the FLSA, 29 U.S.C. § 216(b).  Settlement Agreement ¶ B.31.d.

**B.     Award To Class Members**

The essential settlement terms are that Defendant shall make available a maximum total of One Million Four Hundred And Fifty-Three Thousand And Five Hundred Dollars ($1,453,500.00) ("Gross Settlement Amount") to settle all claims of Plaintiff, Plaintiff Class Members, and Class Counsel.  Settlement Agreement ¶ A.20 and ¶ D.1.   The Settlement Fund shall be allocated as follows:

(1)     Subject to Court approval, attorneys' fees up to $483,333 (or approx., 33% of the Settlement Fund) and costs up to $25,000.  Any money not approved will remain a part of the Net Settlement Fund for distribution to Participating Class Members.  Settlement Agreement ¶ D.1.a;

(2)     Subject Court approval, a class representative and enhancement award of up to $5,000 to Plaintiff De Mira for her services.  Any money not approved will remain a part of the Net Settlement Fund for distribution to Participating Class Members.  Settlement Agreement ¶ D.1.b;

(3)     A payment of $8,500 to Plaintiff De Mira in consideration for her global release of all claims and waiver of all rights to employment, reemployment, and reinstatement.  Settlement Agreement ¶ D.1.c;

(4)     A payment of $20,000 to the Labor & Workforce Development Agency ("LWDA") pursuant to PAGA, the Labor Code Private Attorneys General Act of 2004, Labor Code, § 2698 *et seq.*  Settlement Agreement ¶ D.1.d; and

(5)     Subject to Court approval, the Claims Administrator will be paid out of the Settlement Fund administration expenses (estimated at approx. $40,000).

Settlement Agreement ¶ D.1.e.

After deducting the amounts 1-5 above, and exclusive of employer-side taxes characterized as wages, the remaining net setlement funds will be available for distribution ("Net Settlement Fund").  Settlement Agreement ¶ D.1.f.  Based on the estimated amounts itemized above, approximately $871,667 will be available for distribution to approximately 4,000 Plaintiff Class Members.[1]  Connor Decl. ¶¶ 13 and 16.B-D.   The Settlement requires Plaintiff Class Members to send claims to the Administrator in order to be paid, and individual Settlement Payments shall be distributed based on a Settlement Percentage formula.  Connor Decl. ¶¶ 16.B and D; Settlement Agreement ¶¶ D.1.f and E.g.  Each Participating Class Member shall be entitled to a *pro rata* portion of the Net Settlement Fund based on the number of Work Weeks worked as a fraction of the total Work Weeks by all Participating Class Members.   Connor Decl. ¶¶ 16.B and D; Settlement Agreement ¶¶ D.1.f.  Although Plaintiff Class Members must submit a Claim Form in order to receive payment, ***the entire Net Settlement Fund must be paid out to Participating Class Members.***   Lastly, it should be recognized that, subsequent to Plaintiff's filing of this lawsuit, Defendant has ceased utilizing the Kronos rounding feature and now provides an exact tracking of employee time for payment purposes.  Connor Decl. ¶ 18.

### C.    Notice To Class Members

The parties to this Settlement Agreement contemplate that, prior to final approval, appropriate notice of: 1) the Settlement; 2) any Fairness Hearing at which the Court will consider the approval of this Settlement; and 3) the rights of Class Members to elect to submit a Claim Form to receive payment from the Settlement Fund, exclude themselves from the Class, or object – will be given to Class Members.  The parties contemplate that

---

[1]   The 4,000 Plaintiff Class Members count is based on employee payroll and punch data for the period of August 6, 2008 through March 26, 2013, that was provided to Plaintiff by Defendant, and relied upon, for purposes of the May 7, 2013 mediation.  Settlement Agreement ¶ 4; Connor

Plaintiff's Motion For Preliminary Approval;
Memorandum Of Points And Authorities

1    Notices and Claim Forms will be disseminated in accordance with the proposed Notice

2    plan described herein and the Claims Administrator shall process both the claims and the

3    opt-outs received.   Settlement payments made to Class Members who submit a Claim

4    Form will be allocated based on an individual's Work Weeks out of the total Work Weeks

5    for all Participating Class Members during the Class Period ("weighted workweeks"),

6    with that fraction multiplied by Net Settlement Fund.  Settlement Agreement ¶ D.1.f.

## IV.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.   Standards For Preliminary Approval

At the preliminary approval stage, a court need only "determine whether the proposed settlement is ***within the range of possible approval***."  Murillo v. Pac. Gas & Elec. Co., 226 F.R.D. 468, 479 (E.D. Cal. 2010) [emphasis added].   This is a minimal standard.   Courts do not substitute their judgment for that of the parties, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  Hammon v. Barry, 752 F. Supp. 1087 (D.D.C. 1990); In re Armored Car Anti-Trust Litigation, 472 F.Supp. 1357 (N.D. Ga 1979); Sommers v. Abraham Lincoln Federal Savings & Loan Association, 79 F.R.D. 571 (E.D. Pa. 1978).

Courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998).  Indeed, as a "[s]ettlement is the offspring of compromise," the question upon preliminary approval "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

_____

Decl. ¶ 13.

collusion."

As the Ninth Circuit explained, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Officers for Justice v. Civil Service Commission of City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  Id.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." See, Staton v. Boeing Co., 327 F.3d 938, 961 (9th Cir. 2003).  There is a presumption that negotiations were conducted in good faith.  Newberg, §11.51; Pridd v. Edelman, 883 F.2d 438, 447 (6th Cir. 1989).  There is a strong policy in the Ninth Circuit favoring settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); Officers for Justice, supra, 688 F.2d at 625.

**B.      The Proposed Settlement Satisfies The Requirements For Preliminary Approval**

The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. See, Staton, supra, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  Officers for Justice, supra, 688 F.2d at 625 (9th Cir. 1982).  Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "an amalgam of delicate balancing, gross approximations and rough justice."  Id.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole."  Staton, supra,

327 F.3d at 961.

### 1.    The Settlement Negotiations Occurred At Arm's Length

The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *See,* <u>Linney v. Cellular Alaska Partnership</u>, 1997 WL 450064, *5 (N.D. Cal. 1997).  *See also*, <u>In re Immune Response Securities Litigation</u>, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (approving settlement where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Here, the Settlement Agreement was reached after vigorous arms-length negotiations by experienced counsel on both sides and with the aid of, Mark S. Rudy, an experienced and well-regarded mediator of complex wage and hour class actions. <u>Settlement Agreement</u> ¶¶ A.4 and C.7.  The Parties agreed to mediate after completing a significant amount of discovery, *see*, <u>Settlement Agreement</u> ¶¶ A.3 and A.4, and in any event, approval of a class action settlement does not require that discovery be exhaustive. <u>See, e.g., In re Immune Response Securities Litigation</u>, <u>supra</u>, 497 F.Supp.2d at 1174 (S.D. Cal. 2007).  Prior to reaching the Settlement, the parties exchanged multiple sets of written requests for discovery, produced approximately two thousand (2,000) pages of documents, personnel files, wage statements, time records, and employment policies, and each took respective depositions.  <u>Settlement Agreement</u> ¶ A.3; <u>Connor Decl.</u> ¶¶ 6-13. These formal discovery exchanges are in addition to informal discovery exchanges that preceded the parties' initial case management conference.  <u>Connor Decl.</u> ¶ 4.  The Settlement was negotiated with the assistance of Mr. Rudy and, only after a period of weeks, culminated in the Settlement Agreement.  At all times, the settlement negotiations have been adversarial, non-collusive, and at arm's-length.  <u>Connor Decl.</u> ¶ 15.

### 2.    The Settlement Is Within The Range Of Possible Approval

To grant preliminary approval of this Settlement, the Court need find only that the

1    Settlement falls within the range of possible final approval, also described as "the range of

2    reasonableness."  *See, e.g.,* In re Traffic Executive Ass'n – Eastern Railroads, 627 F.2d

3    631, 633-634 (2d Cir. 1980).

4                    **a)       The Amount Of Recovery Is Reasonable And Adequate**

5            While Plaintiff counsel believes this action has substantial merit, the uncertain

6    outcome of litigation must be acknowledged.  Absent this Settlement, Plaintiff would face

7    challenging hurdles both factually and legally.  Generally, California has adopted the

8    federal/DLSE rule that permits employers to use a rounding policy for recording and

9    compensating employee time as long as the employer's rounding policy does not

10   "consistently result in a failure to pay employees for time worked." *See,* See's Candy

11   Shops, Inc. v. Superior Court (2012) 210 Cal.App.4th 889, 892; *See also*, 29 C.F.R. §

12   785.48(b) (noting that rounding is permitted "provided that it is used in such a manner that

13   it will not result, over a period of time, in failure to compensate the employees properly

14   ***for all the time they have actually worked***.")  Thus, because Defendant's rounding policy

15   is neutral on its face, Plaintiff must factually demonstrate that ***application*** of the Kronos

16   rounding systematically undercompensates employees. *See,*     Alonzo v. Maximus, Inc.

17   (C.D. Cal. 2011) 832 F.Supp.2d 1122, 1126.  Plaintiff's analysis of data suggests that the

18   Kronos rounding disadvantaged employees in terms of comparing underpaid-to-overpaid

19   hours by a ratio of about 5:1.  Connor Decl. ¶ 19.  However, some courts consider the

20   impact on individual employees, as opposed to total hours, and have found that both a

21   gain and loss of minutes results in a neutral application. *See e.g.*, Waine-Golston v. Time

22   Warner Entertainment-Advance/New House Partnership (S.D. Cal. 2013) 2013 WL

23   1285535, *9.  Further, legally, Defendant raises the *de minimis* affirmative defense and

24   suggests that the defense itself raises individualized issues that due process requires not be

25   answered on a class-wide basis.[2]

26

27

28   ------

     [2] Plaintiff's counsel, Spiro Moore LLP, is very cognizant of the uncertainty and associated risks

     Plaintiff's Motion For Preliminary Approval;
     Memorandum Of Points And Authorities

With respect to the meal and rest break claims, Plaintiff would face legal hurdles given: the post-*Brinker* progeny, generally; this Court's recent related rulings, specifically; and a significantly adverse ruling in a non-California FLSA collective action involving related Defendant entities.  For example, shortly after Plaintiff filed her case, this Court denied class certification in *Villa v. United Site Services of California, Inc.* (Nov. 2012), 2012 WL 5503550 a putative meal and rest class and collective action case. In *Villa*, the Court cited *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)  and observed that:

> However, as explained below, Defendant's company-wide written policies are not sufficiently specific to resolve the question of whether individual class members were provided valid meal breaks. ***Because liability cannot be established with reference to the written company-wide policies alone, this question cannot be answered on a class-wide basis***, and thus cannot suffice to satisfy the commonality requirement. *Villa*, *supra*, *6. [emphasis added]

While De Mira can rely on data to evidence "missed," "short," and "late," meal breaks, she cannot point to a written policy to answer the question of "why."  Here, the inability to take breaks is a combined result of workload demands, insufficient staffing, and a product of working in a health care industry that services post-operative and other critical needs patients.

Significantly, on Janurary 31, 2013, an Ohio district court, upon a 'second-stage' review, decertified a previously collectively certified Fair Labor Standards Act ("FLSA") action pending against HCR-related entities in *Creely et. al. v. HCR ManorCare, Inc. et. al.* (N.D. Ohio 2011) 789 F.Supp.2d 819.  A true and correct copy of the "Memoradum Opinion And Order" regarding decertification ("Decert. Order") in Creely v. HCR

---

in this area of the law as they are counsel in the matter of *Gillings v. Time Warner Cable LLC* (Case No. 12-55766), currently pending before the Ninth Circuit. <u>Connor Decl</u>. ¶ 19.  The *Gillings* appeal follows the Central District's summary judgement in favor of an employer after finding that clock-in, rounding, and commission policies were neutral and plaintiff's evidence showed nothing more than *de minimis* underpayments.  *See*, *Gillings v. Time Warner Cable, LLC* (C.D. Cal. 2012) 2012 WL 1656937.

ManorCare, Inc. (Case No. 3:09-cv-2879), filed January 31, 2013 [D.E. No. 231] is attached hereto at <u>Connor Decl.</u> at Exhibit "4".  *Creely* involved allegations that HCR impelemented nationwide – ***except for facilities in California and Wisconsin*** - a thirty-minute auto-deduct of meal breaks from hourly employee timecards.  *Creely*, *supra*, 789 F.Supp.2d at 833.  In *Creely*, plaintiffs argued that, while Defendants' use of the auto-deduct policy was not illegal *per se*, it violated the FLSA and denied overtime wages due to Defendant's implementation.  Specifically, plaintiffs alleged that employees subject to the auto-deduct policy either missed or worked through meal break and were not paid because Defendant illegally shifted the burden of monitoring "compensable work time" to individual employees by: burdening the individual employees to "cancel the auto-deducted thirty minutes when they did not receive an "uninterrupted meal break;" failing to train hourly employees or management what constitutes an uninterrupted meal break; and failed to monitor or ensure that hourly employees received an uninterrupted meal break despite the automatic deduction.  *Id*. at 821.

Following an opt-in period and further discovery including depositions of 78 opt-in plaintiffs and 26 human resource directors from across the country, the Ohio court reviewed evidence pursuant to a 'second stage' collective certification review.  At this point, the *Creely* court concluded as follows:

> Yes, all Plaintiffs were subject to the auto-deduct policy, ***but the application of the policy varied based on several factors, including job duties and individual managers at various HCR facilties***.  Some managers were more involved than other in implementing the policy.  ***For example, while some managers provided follow-up training to Plaintiffs, others are accused of actively discouraging Plaintiffs from submitting missed punch form***.  What is apparent from the record here is that Plaintiffs' knowledge of and training on the policy, and the application of the auto-deduct policy itself, varied in large part depending on the individual managers at Defendant's facilities.  *See*, <u>Decert. Order</u>, p. 11 at Exh. 4 to <u>Connor Decl.</u> ¶ 21. [emphasis added

The *Creely* court also cited California law of *Reed v. Cnty of Orange*, 226 F.R.D. 446, 450 (C.D. Cal. 2010) for the proposition that "the disparity between plaintiffs' factual and employment settings as to…their meal breaks resut[ed] in highly individualized questions of fact..."  and concluded that individualized defenses existed and collective treatrment would be unmanageable.  *Id.* at p. 13-16.  Although *Creely* involves a fact scenario whereby employees did not clock-out or punch out for meal breaks, *see, Creely, supra*, 789 F.Supp.2d at 821 *- which is distinct from Defendant's meal break expectations in California* - it certainly highlights significant additional certification concerns that Plaintiff would face in this already challenging post-*Brinker* atmosphere.

Although Plaintiff is confident of her ability to garner favorable evidence in support of her wage and hour claims, there are inherent risks with litigation.  It is also worth noting that, assuming *arguendo* that Plaintiff prevailed and certified a Fed. R. 23(b)(3) class action, there is no guarantee that Defendants would not later move for and obtain decertification.  If the Court either denied class certification or later decertified it, the Class would recover nothing.  A trial and any appeals that might be taken would be protracted and expensive – assuredly both Parties could expect to incur hundreds of thousands of dollars in costs and fees on depositions, experts, class-wide notice, pre-trial briefing and subsequent appeals.  The substantial benefits obtained by this Settlement far outweigh the expense and delay which would inevitably result from continued litigation of this action and eliminate the risk that the Class might otherwise recover nothing.

The Settlement provides substantial benefits to all Class Members by making a $1,453,500 Settlement Fund available to Class Members with a guaranteed payout of the Net Settlement Fund.  Assuming that a Net Settlement Fund of $871,667[3] is available (after deductions of attorneys' fees and costs, class representative and individual settlement release awards, payment to the LWDA, and costs for administration)

---

[3] $1,453,500 (-$483,333; -$25,000, -$5,000, -$8,500, -$20,000, -$40,000) = $871,667.

Plaintiff's Motion For Preliminary Approval;
Memorandum Of Points And Authorities

distribution to Class Members, ***assuming a maximum 100% Claims Rate and pro rata*** by individual Class Member would ***result in $218 for each Class Member***.  <u>Connor Decl.</u> ¶ 16.D and ¶ 23.  This individual *pro rata* calculation is provided for estimation purposes only.  In actuality, for any Participating Class Member, payment will be determined and weighted by that individual Participating Class Member's Work Weeks relative to the total Participating Work Weeks for the entire Class.  <u>Settlement Agreement</u> ¶ D.1.f (explaining that, if a Participating Class Member is credited with 100 Compensable Work Weeks and there are 100,000 Compensable Work Weeks attributable to all Class Members, then that Participating Class Member's Settlement Share will be .10% of the Net Settlement Fund).  Plaintiff's estimate of the Settlement as a percentage of the possible damages recoverable at trial is discussed further at <u>Connor Decl.</u> ¶¶ 24-28.  It is important to note, however, that subsequent to Plaintiff's filing of this lawsuit and currently, Defendant has ceased utilizing the Kronos rounding feature and now provides an exact tracking of hourly employee time for payment purposes.

### b)      The Class Representative Payment Is Reasonable.

Subject to Court approval, Plaintiff seeks, and Defendant agrees not to oppose, an incentive award fee request not to exceed $5,000 to Plaintiff De Mira for her services in this litigation.  Named plaintiffs in class action litigation are eligible for reasonable incentive payments, and Plaintiff asserts that the amount requested here is reasonable.  Incentive awards are regularly sought to compensate representative plaintiffs for, among other things, the risks in bringing the suit and for the time and effort they spent.  *See*, <u>Van Vranken v. Atlantic Richfield Co.</u> (N.D. Cal. 1995) 901 F.Supp. 294, 299 (approving incentive award for plaintiff who, among other things appeared for deposition and regularly communicated with counsel.)  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  <u>Ingram v. The Coca-Cola Co.</u>, 200 F.R.D.

685, 694 (N.D. Ga. 2001).

As Judge Patel, formerly Chief Judge of the Northern District of California, stated in upholding an incentive award of $10,000 in a wage and hour class action settlement with a common fund of $900,000:

> $10,000.00 incentive award to plaintiff Navarro is reasonable.  In this district, a $5,000 payment is presumptively reasonable.  *See*, <u>Hopson v. Hanesbrands Inc.</u>, No. CV-08-0844, 2009 WL 928133, at *10 (N.D. Cal. April 3, 2009) (LaPorte, Mag. J.)  An employee who lends his name to a lawsuit against a current or former employer is placed in a financially vulnerable position.  Plaintiffs who take on this risk for the genuine enforcement of wage and hour provisions should be encouraged.  Further, when individual plaintiffs faithfully execute their duties as a class representative, they should be rewarded.  <u>Navarro v. Servisair</u>, 2010 WL 1729538, *4 (N.D. Cal. 2010).

*See also*, <u>Bell v. Farmers Ins. Exch.</u>, 115 Cal.App.4th 715, 726 (2004) (upholding "service payments" to named plaintiffs); <u>In re: SmithKline Beckman Corp. Sec. Litig.</u>, 751 F.Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 awards for one named representative of each of nine plaintiff classes involving more than 22,000 claimants in a settlement of $22 million).

Here, Plaintiff is aware of, assumed, and fulfilled her duties as class representative by, among other things, remaining informed of the status of her case, sitting for deposition, and otherwise actively prosecuting the litigation.  *See,* <u>Declaration of Elsy De Mira</u> ("De Mira Decl.") ¶ 6, filed concurrently herewith. <u>Connor Decl.</u> ¶ 29.  Specifically, named Plaintiff participated by, among other things: reviewing documents and pleadings, providing documents and responses to written discovery, regularly communicating with attorneys about the status of the litigation, preparing for depositions, sitting for deposition on April 25, 2013, making herself telephonically available during the full day of settlement negotiations on May 7, 2013 (she had worked the graveyard shift the previous night), and discussing the proposed and actual settlement with counsel. <u>De Mira Decl.</u> ¶

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8; <u>Connor Decl</u>. ¶ 29.  Moreover, the incentive award request is such a tiny fraction of the approximate settlement value ($5,000 is less than one-half of 1% of $1.45 Million), that it is well within the range of enhancement fees awarded by courts.  <u>Staton</u>, <u>supra</u>, 327 F.3d at 975-977.  Even accounting for the agreed upon and estimated deductions, the Net Settlement Fund available for approximately 4,000 Class Members (assuming full participation) would still yield an estimated $218 per Class Member if distributed *pro rata*.[4]  <u>Connor Decl</u>. ¶ 23.  Compared to the Settlement Fund amount of $1,453,500, the requested amount of $5,000, will not appreciably diminish the amount available for distribution to the Class.   Accordingly, Plaintiff asserts that her requested incentive awards merit preliminary approval.

### c)      The Agreed Upon Fees And Costs Are Reasonable

Subject to Court approval, Plaintiff's counsel, Spiro Moore LLP and the Law Offices Of Sahag Majarian II, apply for attorneys' fees of 33% of the gross Settlement Fund, or no more than $483,333, and costs in an amount estimated at $25,000.  Class counsel are entitled to a reasonable award of attorneys' fees and costs.  *See*, <u>Labor Code</u> §§ 218.5, 218.6, 226.7, and 1194; <u>Civ. Proc. Code</u> § 1021.5.  A plaintiff prevails for purpose of a fee award, if plaintiff "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit."  <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 791-792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).  A plaintiff is a prevailing party where a successful settlement is obtained.  <u>Yeagley v. Wells Fargo Co.</u>, 2010 WL 601460, *1 (9th Cir. 2010).  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund.  *See*, <u>Vizcaino v. Microsoft Corp.</u>,

---

[4] As previously explained, under the Settlement Agreement the payments are ***not*** determined *pro rata* by dividing the Net Settlement Fund by the number of Class Members.  Instead, the formula depends on the number of the Participating Class Members individual compensable workweeks relative to the number of

290 F.3d 1043, 1047 (9th Cir. 2002); <u>Torris v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1376 (9th Cir. 1993); <u>Six Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).  *See also*, <u>Gardner v. GC Services, LP.</u>, 2012 WL 1119534, *7 (S.D. Cal. 2012) (approving 30%); <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 226 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark); <u>Morris v. Lifescan, Inc.</u> 54 Fed. Appx. 663 (9th Cir. 2003) (affirming a 33% award).

Currently, the Spiro Moore LLP firm, collectively, has invested well-over 300 hours in this case.  <u>Connor Decl.</u> ¶ 38.  Co-counsel Law Office of Sahag Majarian will provide his detailed hours, rate, and lodestar separately with Plaintiff's Motion For Attorneys' Fees and Costs.  For now, details pertinent to calculating Plaintiff's attorneys' fees and costs of approximately $16,000 are set forth in Plaintiff's supporting declaration filed concurrently herewith.  <u>Connor Decl.</u>  ¶ 35.  A true and correct copy of "HCR ManorCare (De Mira) Costs expended by Spiro Moore is attached to <u>Connor Decl.</u> at Exhibit "5".  Further, Plaintiff will provide the Court with detailed information needed to calculate attorney's fees under the lodestar method in a separate Motion For Attorneys' Fees And Costs that will be filed with the Court at least seven (7) days prior to the close of any objection or opt-out deadline.  This procedure satisfies the standards of <u>In re Mercury Interactive Securities Litigation</u>, 618 F.3d 988 (9th Cir. 2010), and will allow Class Members a sufficient opportunity to review attorneys' fees and costs in advance of any relevant Settlement deadlines.

## V.   PLAINTIFF'S CLAIMS MERIT CONDITIONAL CERTIFICATION

### A.   Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so

---

compensable workweeks for the all the Participating Class Members combined.

numerous that joinder of all members is impracticable." In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." Wang v. Chinese Daily News, 231 F.R.D. 602, 606 (C.D. Cal. 2005).

In this action, and based on the data that was made available to Plaintiff and used at mediation, the Class is composed of approximately 4,000 current and former employees, and is so numerous that the individual joinder of all members is impracticable.

**B.     Commonality And Predominance Of Common Issues**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement is "construed permissively." Hanlon, supra, 150 F.3d at 1019. Plaintiff needs not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." Id.

Plaintiff asserts that Class Members share fundamental common legal questions arising under the California Labor Code §§ 1194, 226.7, 226, 201-203, as well as related provisions of California's applicable Industrial Welfare Commission Wage Orders, and California Bus. & Prof. Code §§ 17200 et seq. In this litigation, all Plaintiff Class Members have a shared interest in determining whether: Defendant's practice of rounding resulted in the illegal underpayment of wages for all hours worked, including overtime; Defendant failed to provide duty-free meal periods in connection with Labor Code § 226.7; Defendant failed to authorize and permit rest breaks in connection with Labor Code § 226.7; and whether Defendant's conduct resulted in derivative violations of Labor Code §226, §§ 201-203, and Bus. & Prof. Code §§ 17200 et seq. Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, Plaintiff asserts that certification of the Plaintiff Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Rule 23(b)(3)'s predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  In other words, a "common nucleus of facts and potential legal remedies" must "dominate this litigation" to support a predominance finding.  Hanlon, supra, 150 F.3d at 1022.

Plaintiff asserts that the Class has several predominant common issues, many arising from class-wide policies set forth in governing employee handbooks, along with class-wide practices resulting from use of the same Kronos rounding functionalities for timekeeping, and that virtually all the remaining issues are matters of the amount of damages and non-damage monetary recoveries.  Plaintiff asserts that the predominant issues are: whether Defendant's rounding practice resulted, over a period of time, in the failure to compensate the employees for all the time they actually worked (including overtime); whether, by virtue of the staffing schedules and workload demands, Defendant's failed to provide Plaintiff Class Members the requisite duty-free meal periods; whether Class Members actually worked during those meal periods resulting in allegedly  unpaid wages and Labor Code §226.7 premiums; whether, by virtue of the staffing schedules and workload demands, Defendant's failed to authorize rest breaks; whether Class Members actually worked during rest breaks resulting unpaid Labor Code § 226.7 premiums; whether Defendant's alleged non-payment of wages dues to rounding and/or meal and rest break violations was "willful" within the meaning of Labor Code § 203; whether Defendant's provided inaccurate wage and hour statements resulting in an "injury" sufficient to support recovery under Labor Code § 226; and whether Defendant's alleged practices constitute an unfair business practice under California's Unfair Competition Law.  Plaintiff asserts that her claims are based on written policies that govern all Class Members and business practices arising substantially from timekeeping methods that, except for a minority of employees working in 4H facilities, govern Plaintiff

Class Members company-wide, and therefore, common questions of law and fact predominate.

### C.    Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims...of the class."  This factor is also has been construed permissively.  *See*, Hanlon, supra, 150 F.3d at 1019-1020.  Named plaintiffs need not be "identically situated" with all other class member.  "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief."  Cal.  Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990).  Typicality refers to the "nature of the claim...of the class representative, and not to the specific facts from which it arose."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  The Ninth Circuit has observed that the typicality requirement can be satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members."  Id.

Here, Plaintiff asserts that her claims are the same as those of the Class and that there are no significant differences between the facts applicable to Plaintiff and those of the other Plaintiff Class Members.  The claims of the proposed Class representative here is typical of the Class as a whole.  Plaintiff is a former non-exempt hourly employee of Defendant. She was subject to inaccurate timekeeping and payroll practices faced by other similarly-situated employees.  She was also subject to the inadequate staffing and workload demands as all other Class Members.  Plaintiff's interest are co-extensive with those of the Class and Plaintiff seeks relief identical to that sought by every other Class Member.

### D.    Adequate Representation

Rule 23 requires that the class representatives "fairly and adequately protect the interests of the class."  To satisfy this element, plaintiff must establish that: (a) the class

representatives do not have a conflict of interest; and (b) class counsel will adequately represent the interest of the class.  *See*, <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiff asserts that there are no conflicts of interest between Plaintiff and Class Members.  In full disclosure and candor to the Court, the Parties originally executed a short-form Memorandum of Understanding ("MOU") on May 7, 2013 that contemplated an individual settlement payment to Plaintiff De Mira in exchange for a global release of Plaintiff's claims in an amount of $5,000.  <u>Connor Decl</u>. ¶ 30.  Based on the circumstances surrounding Ms. De Mira's termination, however, the Parties negotiated and executed a revised MOU on June 17, 2013 that provides an additional $3,500, for a total of $8,500, in exchange and consideration for Plaintiff's global release of all claims.  *See*, <u>Connor Decl.</u> ¶ 30.  Significantly, an additional $3,500 was subsequently added to the overall Gross Settlement Fund amount – thus, the additional monies in no way interfered with or took away money available for distribution to the putative Class.  Accordingly, the consideration in exchange for Ms. De Mira's global release in no way affects the adequacy of the representation provided by Plaintiff De Mira on behalf of the Class.

Plaintiff's counsel has substantial class action experience and can adequately represent the Class.  <u>Connor Decl</u>. ¶¶ 32-39.  Spiro Moore LLP and Law Offices Of Sahag Majarian II have been appointed Class Counsel in many wage and hour class actions against major employers – including joint Class Counsel in other cases dealing with alleged rounding violations.  Spiro Moore LLP has tried two wage and hour class actions over the last several years.  The California Supreme Court has granted review on four of Spiro Moore's cases regarding wage and hour issues, including, <u>Ramirez v. Yosemite Water Co., Inc.</u>, 20 Cal. 4th 7857 (1999); <u>Harris v. Liberty Mutual Insur.</u>, 171 P.3d 545 (2007); <u>Lu v. Hawaiian Gardens 8 Casino, Inc.</u>, 50 Cal.4th 592 (2010).  <u>Connor Decl.</u> ¶ 32.  Spiro Moore has also settled over 100 wage and hour cases over the past ten years -

including cases involving rounding claims.   Connor Decl. ¶¶ 32-39 (detailing the experience of Plaintiff's counsel).   Given Plaintiff's counsel has developed in-depth knowledge of the applicable law and considerable experience, Class Counsel is adequate to represent the Class.

### E.   Superiority

Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of adjudication."  A court considers the following factors to determine whether a class action is superior:   (A) class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[5]  To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares a class action with alternative methods for adjudicating the parties' claims.   Lack of a realistic alternative to a class action that it satisfies the superiority requirements.  *See*, Valentino v. Carter-Wallace, 97 F.3d 1227, 1235-36 (9th Cir. 1996); Local Joint Exec. Board Of Culinary/Bartenders Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001).  In Culinary/Bartender Trust Fund, the Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly served as the only method that would "permit the plaintiffs to pool claims which would be uneconomical to litigate individually."  Id.

Plaintiff asserts that the factors articulated in Rule 23(b)(3)(A)-(C) favor class certification for settlement purposes.  First, Plaintiff asserts that it is difficult to believe that any Class Members have an interest in individually controlling the prosecution of

---

[5] Rule 23(b)(3)(A)-(C).  When a court reviews a class action settlement is does **not** consider Rule 23(b)(3)(D), the fourth factor, regarding the difficulties of managing a class action.  Amchem Products Inc. v. Woodward, 521 U.S. 591, 620 (1997) (stating that for deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

separate actions, given the relatively small sums allegedly involved for any one Class Member.  Any Class Member who wants to pursue a separate action can opt-out.  Second, the Parties are unaware of any competing litigation asserting some or all of the same claims pled in this action.  Finally, Plaintiff asserts that it is desirable to concentrate the issues in this forum.   The Class is comprised of hourly employees who worked for Defendant in California, including within this District.

For purposes of settlement only, the parties agree that all Class Members who timely submit a Claim Form and consent to join this Action are "similarly situated" within the meaning of the FLSA, 29 U.S.C. § 216(b).  Settlement Agreement ¶ B.31.d.  Since Plaintiff has more stringent requirements for class certification under Rule 23, Plaintiff has carried her burden of establishing that the putative collective action members are similarly situated for purposes of preliminary approval of the proposed settlement.  *See*, Clesceri v. Beach City Investigations & Protective Services, Inc.  2011 WL 320998, *4 (C.D. Cal. 2011) (preliminarily approving hybrid settlement after concluding that plaintiffs satisfied Rule 23 requirements observing that "Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standards as the 'common questions predominate' standard under Rule 23(b)(3)").  Thus, Plaintiff moves for collective certification with respect Participating Class Members who submit Claim Form/Opt-Ins within the meaning of the FLSA, 29 U.S.C. § 216(b).

## VI.   THE SETTLEMENT PROVIDES FOR A COMPREHENSIVE NOTICE PROGRAM

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the Court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."  Silber v. Mabo, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).  The method of notice described in the Settlement Agreement is reasonably calculated to reach the Class Members by the best means practicable under the circumstances, and should, therefore, be approved.

## A.    The Form And Method Of Class Notice Should Be Approved

Here, the agreed upon notice procedures are extensive and fully sufficient to inform Class Members of the case, the proposed Settlement, and their rights.  First, the Parties have agreed that the best method to provide the [Proposed] Notice Of Settlement Of Class Action is via U.S. Mail directly to the putative Class Members.  *See*, *e.g.*, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173, 94 S.Ct. 21, 40 L.Ed.2d 732 (1974) (finding that mailed notice to individual class members meets due process requirements).  Since putative Class Members are current and/or former employees, the majority of their last known addresses are retrievable from Defendant's payroll records.  As contemplated in the Settlement Agreement, Defendant will provide an experienced claims administrator, Gilardi & Co., LLC, with the names, social security numbers, last known addresses, and number of compensable Work Weeks during the Class Period of putative Class Members. Connor Decl. ¶ 31.  Moreover, the Claims Administrator shall utilize a Notice Of Change Of Address ("NCOA") and other standard devices to obtain updated and forwarding addresses of Class Members in conjunction with its mailing efforts.  Connor Decl. ¶ 31. Along with the Class Notice, the Claims Administrator shall also mail, if approved, the [Proposed] Claim Form ("Claim Form") that advises Class Members of their credited number of Work Weeks and the estimated amount of their individual Settlement Share Payment.  This method of notice clearly suffices.

Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice. The notice must concisely and clearly state in plain, easily understood language: 1) The

nature of the action; 2) The definition of the class certified; 3) The class claims, issues or defenses; 4) That class members may enter an appearance through counsel; 5) That the court will exclude from the class any member who requests exclusion, stating when and how member may elect to be excluded; and 6)The binding effect of a class judgment on class members under Rule 23(c)(3).   The proposed Notice Of Proposed Class Action Settlement ("Class Notice"), as set forth in the <u>Settlement Agreement</u>, fully with Rule 23(c)(2)(B).   A true and correct copy of the [Proposed] Class Notice, and for ease of reference, is separately attached at Exhibit "2" to <u>Connor Decl</u>. ¶ 31.

In fact, the Class Notice goes beyond the standards and expresses all of the following:

1. Briefly summarizes the alleged claims, substantive issues, and proceedings;

2. Explains the basic terms of the Settlement and the amount Class Members are entitled to receive under the Settlement;

3. Explains that Class Members have the right to opt-out or object to the Settlement within a given time and how to file formal objections if they wish to do so;

4. Explains that Class Members who do not opt-out will be bound by the judgment on the common issues adverse to the Class;

5. Identifies the Claims Administrator and explains the claim submission procedures to receive distribution of payments from the Settlement;

6. Provides estimates of the full value of the Settlement, identifies Class Counsel, and specifies the amounts to be sought in attorneys' fees and incentive awards; and

7. Provides the date, time, and location of the Final Fairness Hearing.

Accordingly, the form and content of the proposed Class Notice should be approved.

Additionally, the form and content of the [Proposed] Claim Form are clear, not burdensome, and likewise should be approved.  A true and correct copy of the [Proposed] Claim Form, and for ease of reference, is separately attached at Exhibit "3" to <u>Connor Decl</u>. ¶ 31.  Moreover, to the extent any Class Member returns an invalidly completed Claim Form, the Claims Administrator will notify that individual so as to provide an opportunity to "cure" the deficiency.  Thus, the mailing of Notice by First-Class mail to Class Members, along with the Claim Form, qualifies as the best notice practicable and should be approved.

**B.     The Court Should Schedule A Final Approval Hearing**

Following adequate notice to the class members, a hearing is held on the proposed settlement.  <u>Manual For Complex Litigation</u>, Fourth, § 21.633 and § 21.634.  Accordingly, it is requested that the Court schedule a hearing on final approval of the Settlement and set a cut-off date for Class Members to opt-out or object.  The hearing on final settlement should be scheduled now so that the date can be disclosed in the Notice Of Settlement Of Class Action.  Cut-off dates for submission of claim forms, opt-out requests, and objections must be established so that the parties can determine, at some specified date, the members of the Settlement Class.  The Administrator is prepared to cause notice to be mailed by U.S. postal service after entry of the preliminary approval order of this Settlement.  The parties suggest that the cut-off date for mailing an opt-out request and submitting an objection be set after the date the Notices are mailed.  Pursuant to the Settlement Agreement, the parties suggest that the cut-off date for submitting a Claim Form be set at least fifty-five (55) days after the date the Notices are mailed.  This will provide sufficient time for Class Members to decide whether or not they wish to participate in this class action and Settlement.  Further, not later than ten (10) days after the deadline for submission of Claim Forms, the Claims Administrator shall provide counsel for both Parties a declaration stating the number of Notices Materials mailed,

items returned as undeliverable and any re-mailing efforts, the number of valid and invalid Claim Forms received, and the number of opt-outs received.

## VII.   CONCLUSION

For the reasons stated above, and upon submission of the forthcoming Supplemental Briefing that will contain the anticipated executed Settlement Agreement and exhibits, the Court should: 1) preliminarily approve the Settlement and conditionally certify the Class; 2) approve the form and method of Notice to the Class; 3) establish the Parties' proposed procedure for Class Members to submit Claim Forms, to object, or opt-out; and 4) schedule a Final Fairness Hearing for final approval of the Settlement.

Respectfully submitted,

Date:  August 19, 2013                    **SPIRO MOORE LLP**

By: _____
    Jennifer Connor
    Ira Spiro
    Justin Marquez
    Denise Diaz
Attorneys for Plaintiff and the putative Class