UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELSY GARCIA DE MIRA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEARTLAND EMPLOYMENT SERVICE, LLC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  12-CV-04092 LHK<br><br>**ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS** |

The Motion of Class Counsel for an award of attorneys' fees in the sum of $436,050 and for costs in the sum of $18,000 came on regularly for hearing before this Court on February 27, 2014. ECF NO. 66 ("Motion").  Defendant does not oppose the Motion.  Having considered the parties' submissions, including the supplemental declaration and exhibits filed after the February 27, 2014 hearing, the relevant case law, the parties' arguments, and the record in this case, the Court GRANTS Class Counsel attorneys' fees in the sum of $406,980 and costs in the sum of $18,000.

## I. ATTORNEYS' FEES

The efforts of Class Counsel have created a common fund for the benefit of the Settlement Class in the amount of $1,453,500. This is a non-reversionary settlement and, as such, no funds will be returned to the Defendant. Class Counsel seeks an upward adjustment of the Ninth Circuit "benchmark" of 25% of the common fund to 30% of that fund. It should be noted that Class Counsel reduced their requests from the $483,333 (or 33.3%) originally sought at preliminary approval. ECF Nos. 45 and 59.

### A.     Legal Standard for Granting Attorney's Fees

The Ninth Circuit has stated that, in common fund cases like the instant case, a court may award attorneys' fees as a percentage of the common fund. *Paul, Johnson, Alston & Hunt v. Graulty ("Paul")*, 886 F.2d 268, 271 (9th Cir. 1989). The Ninth Circuit has endorsed a benchmark of 25% for attorney's fees awards. *Id.* at 272. That percentage amount can then be adjusted upward or downward depending on the circumstances of the case. *Id.* Indeed, "in most common fund cases, the award exceeds th[e] benchmark." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Percentage awards of between 20% and 30% are common. *See In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377 (N.D. Cal 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."); *Vizcaino v. Microsoft Corp.* ("*Vizcaino II*"), 290 F.3d 1043, 1047 (9th Cir. 2002) ("The district court based its percentage award on *Bowles*, which states that '[i]n common fund cases, the 'benchmark' award is 25 percent of the recovery obtained,' with 20-30% as the usual range... [The] Ninth Circuit cases echo this approach." (*quoting Bowles v. Washington Dept. of Ret. Sys.*, 121 Wash. 2d 52, 72-73 (1993) and *citing Paul*, 886 F.2d at 271)).

Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino II*, 290 F.3d at 1048. The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the

2.

plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-1050. In addition, district courts may also compare the proposed percentage award to the attorney's fee award that would be granted were the district court to use the lodestar method to determine fees. *Id.* at 1050.

**B.     Analysis**

Class Counsel seeks an upward adjustment of the Ninth Circuit benchmark of 25% of the common fund to 30% of that fund. As set forth below, the Court believes that, particularly in light of the significant risks of the litigation, the factors set forth in *Vizcaino II* weigh in favor of granting Class Counsel an upward adjustment of the Ninth Circuit benchmark. However, the Court believes that a percentage award of 28% of the common fund is appropriate, rather than the 30% requested by Class Counsel.

**1.     The Results Achieved**

The Court notes that Class Counsel has achieved monetary and non-monetary results in this case. Class Counsel has achieved a settlement in the amount of $1,453,500. That fund was made available to 4,144 class members, with 1,193 members submitting claim forms and participating. The fund is also non-reversionary, thus the entire Net Settlement Fund (after deductions for attorneys' fees, costs, incentive awards, LWDA, and administrative costs) will be fully paid to 1,193 class members with an average recovery for each participating class members of approximately $776.15. Class Counsel represents that the average recovery for the 1,193 class members is approximately 72% of the estimated actual damages recovery. *See* Connor Decl. ¶ 40, ECF No. 68-1. Significantly, there were no objections to the final settlement or Class Counsel's request for attorney's fees. There were also only 4 opt-outs. Finally, Defendant has ceased and no longer utilizes the Kronos rounding feature and now uses actual tracking of employee time for payment purposes as it pertains to hourly non-exempt employees in California. Accordingly, these results achieved on behalf of the class by Class Counsel weigh in favor of granting Class Counsel's request for a fee award of 28%.

**2.     The Risks Of Litigation**

There were significant risks of litigation here. As an initial matter, Defendant was represented by an experienced and well-resourced defense firm. Had Class Counsel failed to

vigorously prosecute this case, it is unlikely that this settlement could have been achieved. Absent the settlement, Plaintiff would face challenging hurdles both factually and legally. Defendant's rounding policy is neutral on its face, thus, Plaintiff must factually demonstrate that application of the Kronos rounding systematically undercompensates employees. *See Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1126 (C.D. Cal. 2011). Plaintiff's analysis of data suggests that the Kronos rounding disadvantaged employees in terms of comparing underpaid-to-overpaid hours by a ratio of about 5:1. However, some courts consider the impact on individual employees, as opposed to total hours, and have found that both a gain and loss of minutes results in a neutral application. *See, e.g., Waine-Golston v. Time Warner Entertainment-Advance/New House Partnership*, No. 11cv1-57-GPB(RBB), 2013 WL 1285535, at *9 (S.D. Cal. March 27, 2013). In fact, Class Counsel is cognizant of the uncertainty and associated risks in this area of the law as they are counsel in the matter of *Gillings v. Time Warner Cable, LLC* (Case No. 12-55766), currently pending before the Ninth Circuit. In *Gillings*, Class Counsel appealed the U.S. District Court for the Central District of California's grant of summary judgment in favor of an employer after finding that the clock-in, rounding, and commission policies at issue were neutral and that the plaintiff's evidence showed nothing more than *de minimis* underpayments. *See Gillings v. Time Warner Cable, LLC*, No. CV 10-5565-AG(RNBx), 2012 WL 1656937 (C.D. Cal. March 26, 2012). Further, in the instant case, Defendant also raises the *de minimis* affirmative defense and contends that the defense itself raises individualized issues such that due process requires denial of certification.

### 3. The Skill Required And Quality Of Work

Class Counsel's experience in wage and hour class actions enabled them to evaluate the strengths and weaknesses of the case against Defendant and the reasonableness of the settlement. The parties reached mediation relatively early in this case, after formal and informal discovery exchanges between counsel. As part of the ongoing litigation of this matter, and in preparation for mediation and trial, Class Counsel employed the services of an expert to assist in the proper evaluation of over 1,000,000 days of employee time punch data extracted from Defendant's Kronos timekeeping system and subject to rounding. Plaintiff's counsel also exchanged and reviewed 1,700 pages of documents, propounded and responded to discovery, and traveled for an out-of-state Fed. R.

30(b)(6) deposition. Class Counsel was comprised of six attorneys who collectively contributed over five hundred hours to this matter. Connor Decl. ¶ 44, ECF No. 66-2. Only after garnering sufficient information to make informed decisions did Class Counsel proceed to settlement negotiations before wage and hour mediator, Mark Rudy. Class Counsel willingly advanced the costs associated with the experts, conducted investigation, and undertook discovery that resulted in the Settlement for the Class.

### 4. Contingent Nature

From the outset of the case, Class Counsel's prosecution of this action involved significant financial risk for Class Counsel. Class Counsel undertook this matter solely on a contingent basis with no guarantee of recovery and against a well-represented Defendant. All of the financial risk of litigation was assumed by Class Counsel, whose fee arrangement with Plaintiff requires Class Counsel to bear all of the costs of litigation and the costs of attorney and paralegal time, which was substantial. Class Counsel took a significant risk in investing in this case, to some extent was precluded from taking and devoting resources to other cases or potential cases, and undertook it on a purely contingent basis with no guarantee that the time expended would result in any recovery or recoupment of costs.

### 5. Awards In Similar Cases

An attorney's fee award that is 28% of the common fund is consistent with, and within the range of, awards made in wage and hour cases by district courts in California. *Vizcaino II, supra*, 290 F.3d at 1047.

Here, Class Counsel's 30% request is less than the 33% maximum negotiated in the Settlement Agreement, but, as will be discussed below, is substantially more than the lodestar. In support of its request, Class Counsel cite this Court's award of 30% of the common fund with a 2.76 multiplier in *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358 (N.D. Cal. 2013). However, *Hopkins* is distinguishable from the instant case. Primarily, in *Hopkins*, the class counsel achieved remarkable results for the class. The *Hopkins* class counsel obtained a settlement amount of $4,250,000, to be shared amongst only 95 class members. All class members would recover damages in the *Hopkins* settlement because no claim form was required. After certain deductions,

5.

1  the average recovery for *each* class member in *Hopkins* was approximately $30,424.04.
2  Meanwhile, in the instant case, Class Counsel obtained a settlement amount of $1,453,500, to be
3  shared amongst 4,114 potential class members.  Assuming 100 percent participation as in *Hopkins*,
4  after certain deductions, the average recovery for each class member in the instant case would be
5  approximately $218.  For the 1,193 class members who submitted claim forms, these class
6  members would receive $776.15.  Thus, the $218 or $776.15 average recovery in the instant case
7  pales in comparison to the $30,424.04 average recovery in *Hopkins*.  Moreover, the *Hopkins* class
8  counsel was able to achieve such results for the class because the *Hopkins* class counsel prevailed
9  in a hard-fought, complex motion for class certification after extensive discovery.  By comparison,
10 Class Counsel in the instant case did not engage in motion practice before settlement, engaged in
11 some written discovery, reviewed 1,700 pages of documents, and attended two depositions.
12 Nevertheless, the Court finds that the significant risk and non-monetary results achieved by Class
13 Counsel in the instant case warrant an upward departure from the 25% benchmark.

14 **6.     Comparison To Lodestar**

15 In cases where courts apply the percentage method to calculate fees, it is common for
16 courts to use a rough calculation of the lodestar as a cross-check to assess the reasonableness of
17 the percentage award.  *See, Vizcaino II*, 290 F.3d at 1050.  The purpose of this multiplier is to
18 account for the risk Class Counsel assumes when they take on contingent-fee cases.  *See, Vizcaino
19 v. Microsoft Corp*. ("*Vizcaino I*") 142 F. Supp. 2d 1299, 1305 (W.D. Wa. 2001).  Multipliers of 1
20 to 4 are commonly found to be appropriate in complex class action cases.  *Vizcaino II*, 290 F.3d at
21 1051, n.6 (finding that, in approximately 83 percent of the cases surveyed by the Court, the
22 multiplier was between 1.0 and 4.0, with a "bare majority…54%...in the 1.5-3.0 range").

23 Here, Class Counsel's total lodestar was $300,342.50—significantly less than Class
24 Counsel's request of $436,050 and the Court's award of $406,980.  *See* Supplemental Declaration
25 Of Jennifer L. Connor ¶ 11, ECF No. 74 ("Suppl. Connor Decl.").

26 Specifically, to date, Class Counsel represent that they have performed the following work in
27 this litigation:  (1) investigated and filed this class action; (2) communicated with the named Plaintiff
28 about the status of her case; (3) propounded, responded, and/or reviewed multiple sets of written

requests for discovery and over 1,700 pages of documents, personnel files, wage statements, time records, and employment policies; (4) prepared for and attended 2 depositions; (5) investigated applicable law; (6) engaged consultants and reviewed over 1 million days of time record data and analyzed damages; (7) attended a full-day mediation in San Francisco; (8) engaged in arm's-length negotiations; (9) crafted a Settlement, worked with counsel for Defendant to develop class notice and claim form materials; (10) successfully moved for preliminary approval; and (11) responded to Class Members' questions concerning the Class Notice and Settlement. Connor Decl. ¶43.

Class Counsel attests that the lodestar was calculated using the hourly rates Class Counsel normally charges for wage and hour litigation and is consistent with prevailing rates and the Updated Laffey Matrix. *See*, Suppl. Connor Decl. Based on a lodestar of $300,342.50, the Court's award of 28% of the common fund results in a multiplier of 1.36. Such an award is consistent with case law. The Court believes that the request of $406,980 is a reasonable amount that adequately compensates Class Counsel.

### C.    Conclusion Regarding Attorney's Fees

Having reviewed all of the factors above, the Court agrees with Class Counsel that an upward departure from the 25% benchmark is warranted in light of: (1) the significant risks of litigation; (2) the monetary and nonmonetary results achieved for the class; (3) the fact that there is no reverter; (4) the skill required in conduct this litigation properly; and (5) the contingent nature of Class Counsel's fee arrangement. In light of the Court's consideration of all of these factors, the Court finds that an attorney's fee award that is 28% of the common fund is appropriate.

As an initial matter, the Court observes that the "usual range" for fee awards in percentage cases is 20 to 30 percent. *Vizcaino II*, 290 F.3d at 1047; *see also In re Activision Sec. Litig.*, 723 F. Supp. at 1377 ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Thus, Class Counsel's 30% request is at the high end of this usual range. While the Court certainly applauds Class Counsel's efforts in this case, the Court does not believe that the results achieved in this case or the work in this case, which consisted primarily of investigation, engaging in limited written discovery, reviewing 1,700 pages of documents, taking

1  one deposition, defending one deposition, and negotiating the settlement, justify granting Class
2  Counsel's requested fee award of 30%.  The Court also does not believe that the work done,
3  litigation risks, and results achieved in the instant case are comparable to that in *Hopkins*.

4        For the reasons set forth above, the Court believes that an award of 28% of the common
5  fund is appropriate.  Such an award represents a multiplier of approximately 1.36, which falls
6  within the "majority" range for risk multipliers.  *See Vizcaino II*, 290 F.3d at 1051 n. 6 (finding
7  that, of the cases surveyed by the Court, the multiplier in 83 percent of cases was from "1.0-4.0.").
8  Accordingly, the Court awards Class Counsel attorney's fees in the amount of $406,980, well
9  above Class Counsel's lodestar $300,342.50.  The Court believes that this amount adequately
10 compensates Class Counsel for their work in this case.

11 **II.   COSTS AND EXPENSES**

12       Class Counsel also requests reimbursement of their out-of-pocket expenses incurred to
13 prosecute this action in an amount of $18,000.  These expenses were incidental and necessary to
14 the effective representation of the Class.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  The
15 necessary expenses included retention of experts for damages analysis, discovery including out-of-
16 state depositions, research, filings, travel for court appearances, and mediation.  These costs were
17 necessary for the preparation of the case for litigation, mediation, and effectuating the settlement
18 reached for the benefit of class members.  It should be noted that the requested amount of $18,000
19 is less than the maximum negotiated amount of $25,000 in the Settlement Agreement.  ECF No.
20 57.  Accordingly, Class Counsel shall recover costs and expenses of $18,000.

21 **IT IS SO ORDERED.**

Dated: March 13, 2014

LUCY H. KOH
United States District Judge